UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 13-3554(DSD/JJK)

Karyn K. Weske,

       Plaintiff,

v.                                              **AMENDED ORDER**

Hartford Life and Accident
Insurance Company,

       Defendant.


    Jacob J. Jagdfeld, Esq. and Johnson Becker, PLLC, 33
    South Sixth Street, Suite 4530, Minneapolis, MN 55402,
    counsel for plaintiff.

    Eric N. Linsk, Esq. and Lockridge Grindal Nauen, PLLP,
    100 Washington Ave. S., Suite 2200, Minneapolis, MN
    55401, counsel for defendant.


This matter is before the court upon the cross-motions for summary judgment by plaintiff Karyn K. Weske and defendant Hartford Life and Accident Insurance Company (Hartford).  Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants Weske's motion in part and denies Hartford's motion.


## BACKGROUND

This insurance benefit dispute arises out of Hartford's denial of long-term disability benefits to Weske.  Weske had disability insurance under an employee-welfare benefit plan (Plan) sponsored by her former employer, Medtronic, Inc., and insured by Hartford.

See HART000001-47.[1]  The Policy expressly grants Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy." Id. at 000018.

In April 2012, Weske fell off her roof and sustained multiple serious orthopaedic injuries to her back, feet, ankles, and left wrist.  See id. at 355-56, 419, 422.  Weske has undergone numerous surgeries to repair her injuries, including follow-up surgeries to remove hardware placed during surgeries immediately following the accident.  Id. at 311-14.  Weske's most recent surgery was on April 23, 2013, during which Dr. Paul Cammack removed hardware from her left ankle and applied a corticosteroid injection to her left foot, and Dr. Mark Fisher removed hardware from her left wrist.  Id.

At the time of her accident, Weske was a Senior Customer Service Representative for Medtronic.  According to a Physical Demands Analysis (PDA) completed by Medtronic, Weske's position required her to use a computer, telephone, calculator, and head set for eight hours per day, five days per week.  Id. at 106-07.  Her schedule included one hour for lunch and two fifteen minute breaks. Id.  A typical workday required Weske to sit for five hours, stand

---

[1] Specific pages of the administrative record will be referenced by the Bates-stamp numbers.  The administrative record submitted by Hartford contains a large stamp in the middle of each page identifying the record as confidential.  The stamp is unnecessary and makes it more difficult for the court to read the record.  The court asks that Hartford refrain from using such stamps in future submissions.

for three hours, and walk for .5 hours.  Id.  The PDA indicates that Weske was permitted to sit or stand as needed.  Id.

After the accident, Weske was unable to work.  She received short-term salary continuance benefits until the fall of 2012.  Id. at 186.  Thereafter, Weske filed a claim for long-term disability benefits under the Policy, and Hartford approved her claim effective October 17, 2012.  Id. at 186, 379-84.  Hartford explained that benefits would continue for the first twelve months as long as Weske remained unable to perform one or more of the "Essential Duties of Your Occupation."[2]  Id. at 186-87.  "Essential Duty" is defined as a duty that "1) is substantial, not incidental; 2) is fundamental or inherent to the occupation; and 3) cannot be reasonably omitted or changed."  Id. at 19, 187.  "Your Occupation" is defined as "Your Occupation as it is recognized in the general workplace."  Id. at 22; 187.  The Policy expressly states that "Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location."  Id.  Hartford concluded that Weske's occupation was sedentary, involving sitting most of the time, occasional walking or standing for brief periods, and occasional lifting.  Id. at 136, 182.  Hartford further

---

[2] After twelve months, Weske would be deemed disabled if she could not perform one or more of the Essential Duties of "Any Occupation."  See id.  Because Hartford terminated Weske's benefits within the first twelve-month period, the court need not address the "Any Occupation" standard.

3

explained that Weske would be required to periodically provide continued proof of disability. Id. at 188.

In a letter dated March 25, 2013, Hartford notified Weske that her disability benefits were terminated effective March 1, 2013.[3] Id. at 180. Hartford explained that based on communications with Fischer and Cammack, the PDA, and an occupational analysis, Weske no longer met the definition of disabled under the Policy. Id. at 181-82. Hartford specifically noted that on March 1, 2013, Fisher, who treated Weske's left wrist, indicated occasional ability to lift more than twenty pounds bilaterally and "frequent ability to reach at all levels and finger/handle." Id. at 182, 372. As to Cammack, who treated Weske's ankle and foot, Hartford noted that although Cammack had not released Weske to return to work, he also did not indicate any restrictions or limitations in his notes. Id. at 182, 297. That information was conveyed in a voicemail from Cammack's office assistant on March 14. See id. There is no evidence in the record that Hartford requested additional information from Cammack. Based on the information gathered, Hartford concluded that Weske could return to work in "Your Occupation." Id. at 182. In doing so, Hartford failed to note Weske's documented scheduled surgery on April 23, 2013, to remove hardware from her ankle and wrist. See id. at 180-82, 297, 371.

---

[3] Weske claims that the letter was postmarked March 29 and that she received it April 11, two weeks before her scheduled surgery. Id. at 364.

Weske appealed the denial on April 15, 2013.  Id. at 364. Weske argued that she remained disabled due to pain in her back and feet, which was not well-managed through pain medication.  Id.  She explained that she had upcoming surgery to alleviate her ankle and foot pain and that she anticipated back surgery in approximately one year.[4]  Id.  Weske also provided an April 11, 2013, letter from Cammack, which supported her claim of disability before the April surgery:

> It's my opinion that this surgery is medically necessary. She is unable to stand and walk due to trouble she is having with her feet.  She is having a difficult time being mobile enough to maintain any kind of gainful employment.  In the interim between her two surgeries, she has really not been able to look for meaningful work, as she has had a second surgery upcoming .... Again, it's my opinion that this surgery is medically necessary in order to allow her to have sufficient mobility to perform activities of daily living, as well as employment activities.

Id. at 365.

On April 23, 2013, Cammack performed the surgery, removing hardware from Weske's left ankle and administering a corticosteroid injection into her right subtalar joint.  Id. at 311.  Under the same anaesthesia, Fischer removed hardware from her left wrist. Id. at 312-13.  Two weeks later, Weske reported that her right foot was "great," she was without pain, and she felt as though she was walking for a normal gait.  Id. at 301.  Weske also reported that

---

[4] Weske's treating physician for her back, Dr. Gregg Dyste, did not limit her ability to work.  Id. at 123, 291.

5

her left foot was "about 75% better with her hardware out" but still stiff. Id.

On May 21, 2013, Cammack responded to a Physical Capacities Evaluation Form (PCE) provided by Hartford, stating "No work 6 months due to continued pain." Id. at 299-300. Cammack also noted that Weske could sit for eight hours at a time, stand for one hour per day, and walk for one hour per day. Id. at 299. Cammack also placed restrictions on Weske's ability to drive, climb, stoop, crouch, crawl, or reach until June 6, 2013. Id. at 299-300. Hartford's claim file ignores the content of the PCE, simply noting that "Dr. Cammack has completed a PCE based upon the 1/28/13 office visit."[5] Id. at 120.

During the appeal process, Hartford requested an external file review by Dr. David Trotter, a board certified orthopaedic surgeon. Id. at 121-22. Hartford specifically requested that Trotter determine Weske's restrictions and limitations as of March 1, 2013, and whether those restrictions and/or limitations improved or worsened since March 1, 2013. Id. at 294. Trotter reviewed "all information, records and data provided ... by [Hartford.]" Id. at 268. In his report, Trotter referenced Cammack's April 11 letter,

---

[5] The PCE form is confusing in that it references an assessment date of January 28, 2013, while directly discussing limitations following the April 23, 2013, surgery. See id. at 299-300. Hartford explains that it sent the PCE to Cammack to assess Weske's functionality before March 1, 2013. Id. at 122. Instead, Cammack assessed Weske's post-surgery functionality. Id. at 299-300.

6

but he failed to note the letter's key aspects, namely, that Weske's surgery was medically necessary and that she was unable to walk, stand, or work before the surgery. See id. at 267, 365. Trotter also noted three other post-termination records: (1) the April 23, 2013, operative report; (2) an April 30, 2013, physical therapy report indicating Weske's post-operative complaints of pain and stiffness, range of motion flexion to 35 degrees and extension to 55 degrees, and a plan for continued physical therapy; and (3) notes from the May 9, 2013, office visit during which Weske reported that her foot was 75% better. Id. at 267. Trotter reported that he made several attempts to contact Cammack and Fischer without success. Id. at 268-69. There is no evidence that Trotter considered - or was provided - the PCE.

Trotter noted that Weske's post March 1, 2013, symptoms were "supported by the medical evidence available." Id. at 270. Trotter further determined that Weske had physical restrictions and/or limitations after March 1 as follows: (1) from March 1, 2013, to April 23, 2013, "walking or standing are restricted to no more than 30 minutes at a time for a combined total of two hours in an eight hour day.... Sitting, lifting, carrying are unrestricted"; (2) following surgery Weske would need "four weeks off from work to recover"; and (3) from May 23, 2013, to June 23, 2013, "walking or standing are restricted to no more than 30 minutes at a time for a combined total of two hours in an eight hour day." Id. Trotter

7

determined that there would be no restrictions after June 23, 2013. Id. Trotter ultimately concluded that Weske "could have maintained a full-time work schedule within the supported restrictions and limitations between 03/01/2013 through present." Id. After completing his initial report, Trotter received a response from Cammack indicating that as of March 1, 2013, Weske was "unable to stand or walk for more than 15 min at a time." Id. at 275. Cammack also stated that there were no changes to Weske's limitations after March 1, 2013. Id. Trotter concluded that Cammack's response did not change his opinion. Id. at 272.

On July 12, 2013, Hartford notified Weske that it was upholding the denial of benefits. Id. at 157. On October 30, 2013, Weske filed suit in state court, alleging that Hartford wrongfully terminated her benefits, and Hartford timely removed. Both parties now move for summary judgment.

## DISCUSSION

### I. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists – or cannot exist – about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II. Denial of Benefits**

Under ERISA, a plan participant may bring a civil action to "recover benefits due to [her] under the terms of [her] plan." 29 U.S.C. § 1132(a)(1)(B). Because the Plan gave Hartford discretion to construe the terms of the Plan, its decision is reviewed under the abuse of discretion standard. Ortlieb v. United HealthCare Choice Plans, 387 F.3d 778, 781 (8th Cir. 2004). Under the abuse of discretion standard, the court will uphold Hartford's decision if it was supported by substantial evidence. McGee v. Reliance

9

Standard Life Ins. Co., 360 F.3d 921, 924 (8th Cir. 2004). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citation and internal quotation marks omitted). The court will not disturb a decision supported by substantial evidence even if a different, reasonable decision could have been made. Id. "When reviewing a denial of benefits by an administrator who has discretion under an ERISA-regulated plan, a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider post hoc rationales." King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005) (citation and internal quotation marks omitted).

The first issue to resolve is the correct standard for determining whether Weske was disabled from March 1, 2013, forward. The Policy provides that a claimant is no longer disabled if, within twelve months of coverage, he or she is able to return to "Your Occupation." Weske argues that "Your Occupation" refers to her specific position at Medtronic. She notes that the PDA completed by Medtronic states that her position required her to stand for three hours per day, and that the undisputed medical evidence shows that she was restricted from doing so at all times relevant to this matter. HART000106-07. Hartford responds that the Policy expressly defines the term "Your Occupation" as it is

Standard Life Ins. Co., 360 F.3d 921, 924 (8th Cir. 2004). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citation and internal quotation marks omitted). The court will not disturb a decision supported by substantial evidence even if a different, reasonable decision could have been made. Id. "When reviewing a denial of benefits by an administrator who has discretion under an ERISA-regulated plan, a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider post hoc rationales." King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005) (citation and internal quotation marks omitted).

The first issue to resolve is the correct standard for determining whether Weske was disabled from March 1, 2013, forward. The Policy provides that a claimant is no longer disabled if, within twelve months of coverage, he or she is able to return to "Your Occupation." Weske argues that "Your Occupation" refers to her specific position at Medtronic. She notes that the PDA completed by Medtronic states that her position required her to stand for three hours per day, and that the undisputed medical evidence shows that she was restricted from doing so at all times relevant to this matter. HART000106-07. Hartford responds that the Policy expressly defines the term "Your Occupation" as it is

"recognized in the general workplace" rather than the specific requirements of the claimaint's position. Id. at 22; 187. The court agrees. The Policy expressly states that "Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location." Id. at 22; 187. Accordingly, Hartford appropriately considered whether Weske could work in a sedentary position in the general workplace, which involves sitting most of the time, occasional walking or standing for brief periods, and occasional lifting.

Even applying that standard, however, Hartford's decision was not supported by substantial evidence. The parties agree that Weske was disabled under the Policy from October 17, 2012, to February 28, 2013, and for the four weeks following her surgery on April 23, 2013. The point of contention is whether Weske was disabled from March 1 to April 23.[6] The court finds that Hartford's finding of no disability during that period was not supported by substantial evidence. In retroactively determining that Weske was not disabled, Hartford relied on Fischer's report that her wrist did not preclude Weske from performing keyboard functions, and the voicemail from Cammack's office reporting no

---

[6] Weske seeks full reinstatement of her long-term disability benefits, but provides no basis for the court to conclude that she is currently disabled - nearly two years after the surgery - or that her disability extended beyond the six-month post-PCE period. For that reason, the court is constrained to consider the period from March 1, 2013 to November 21, 2013.

restrictions or limitations in Cammack's notes. Hartford acknowledges, however, that Cammack did not clear Weske to return to work. Hartford appears to have done nothing to follow up with Cammack between March 14, and the date of the denial letter, March 25, to actually determine Weske's restrictions and limitations and her ability to work. Indeed, had Hartford done so, it likely would have received information similar to that contained in Cammack's April 11 letter, which unequivocally states that Weske is unable to stand or walk, and cannot return to work before the April surgery. Id. at 365. There is no medical or other evidence in the record to the contrary. Hartford did not even seek an independent medical review until after it made the decision to terminate Weske's benefits and after Weske appealed that decision. Hartford simply failed to do the proper due diligence in assessing Weske's disability status before the surgery.

Further, Hartford's decision to retroactively terminate benefits effective March 1, 2013, appears to have been arbitrary. Although Fisher's March 1 report could support a conclusion that Weske's wrist injury did not inhibit certain work activities, the phone call - even if adequate to trigger termination - with Cammack's office did not occur until March 14. Thus, there is no evidence in the record supporting Hartford's determination that Weske was not disabled - at least as to her foot and ankle injuries

- on March 1.[7]

The appeal process did not repair the flaws in Hartford's initial denial. Trotter does not appear to have considered Cammack's opinion in the April 11 letter or the PCE, both of which are crucial to the issue of Weske's disability status. Although opinions of treating physicians are not automatically entitled to greater weight than those of reviewing physicians, a reviewing physician's contrary opinion must be supported by the record. Midgett v. Wash. Grp. Int'l Long Term Disability Plan, 561 F.3d 887, 897 (8th Cir. 2009). Because Trotter failed to adequately consider Cammack's letter and the PCE, his opinion is significantly undermined. Trotter did nothing to discredit Cammack's opinion, he ignored it. As a result, Hartford's reliance on Trotter's opinion was misplaced.

Hartford also independently failed to review all relevant evidence in upholding its denial. Most notably, there is no indication that Hartford considered the PCE. And to the extent Hartford considered the April 11 letter, it did so only summarily. See HART000156 ("Although Dr. Cammack stated in his April 11, 2013 letter that in the interim between your two surgeries you were not able to look for meaningful work, this is not a compelling argument

---

[7] Hartford cited Cammack's estimate that Weske would need eight weeks to recovery from her December 12, 2012, surgery, as justification for the March 1 termination date. See HART000154. Cammack's pre-surgery estimate of Weske's recovery period is insufficient to support the benefits termination.

13

to support you were physically unable to work your own occupation."). Hartford's failure to fully consider this key evidence was an abuse of discretion.

The court is also troubled by the timing of Hartford's decision to terminate benefits. Hartford was aware of the surgery scheduled for April 23, and acknowledges that the surgery would render Weske disabled again for at least four weeks. Hartford's haste to terminate benefits just before the surgery evinces a desire to avoid coverage for the post-surgery period. Perhaps sensitive to this concern, Hartford argued at the hearing that Weske could have taken advantage of the Policy's recurrent disability provision if she had just returned to work before the surgery. If applicable, the provision would have allowed Weske to trigger her disability coverage post-surgery provided she was employed before the surgery. See HART000012 ("[I]f You return to work as an Active Employee and then become Disabled and such Disability is:  1) due to the same cause; or 2) due to a related cause; and 3) within 6 month(s) of the return to work; ... The Policy remains in force."). The recurrent disability provision does not appear to apply, however, because coverage is dependent on the claimant's return to work with the policyholder, here, Medtronic. See HART000018-19 (defining "Active Employee" as "an employee who works for the Employer" and "Employer" as "the Policyholder"). There is no evidence that there was a position

14

available for Weske at Medtronic at all, let alone one that fit her undisputed pre-surgery restrictions and limitations.  Under these circumstances, Weske would not have been able to secure coverage under the recurrent disability provision, and Hartford's argument is disingenuous.

Having concluded that Hartford abused its discretion in terminating Weske's benefits effective March 1, 2013, the court holds that Weske's benefits shall be reinstated for the period of March 1, 2013, to November 21, 2013.  The end-date is consistent with Cammack's un-rebutted opinion that Weske could not work for the six months following the PCE, i.e., until November 21, 2013.  Based on the record, the court is unable to determine whether Weske was disabled after November 21, 2013, and will not consider that issue.  The court will allow the parties to separately brief the matter of attorneys' fees, costs, and prejudgment interest.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.   The motion for summary judgment by defendant [ECF No. 16] is denied; and

      2.   The motion for summary judgment by plaintiff [ECF No. 17] is granted in part as set forth above.

Dated:  February 12, 2015

                                      <u>s/David S. Doty</u>
                                      David S. Doty, Judge
                                      United States District Court